SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Board of Education of the Township of Sparta v. M.N.** (A-16-23) (088378)

**Argued March 12, 2024 -- Decided August 7, 2024**

**WAINER APTER, J., writing for a unanimous Court.**

In this appeal, the Court considers whether, under the Individuals with Disabilities Education Act (IDEA), a student with disabilities who received a State-issued diploma based on passing the General Education Development test (GED) is entitled to re-enroll in his local public high school to receive a free appropriate public education (FAPE).

When he was fifteen years old, A.D. began attending Sparta High School. He had been designated as having a disability under the IDEA, and Sparta accepted his individualized education program from his previous school. In January 2019, Sparta informed A.D. that he was in danger of failing several classes. After a period of home instruction in March 2019, A.D.'s parents withdrew him from Sparta High School. A.D. then took the GED and passed, and he received a State-issued high school diploma in April 2019. That same month, A.D. re-enrolled at Sparta High School and again began receiving home instruction.

After periods of home instruction, in-person attendance, and further withdrawals from the high school, A.D.'s mother, M.N., tried to re-enroll A.D. in May 2021. A.D. was eighteen years old at the time. Sparta denied the request, citing A.D.'s receipt of a State-issued high school diploma in April 2019.

M.N. requested a due process hearing with the New Jersey Department of Education (DOE). The Commissioner of the DOE (Commissioner) transferred the matter to the Office of Administrative Law (OAL). The Administrative Law Judge (ALJ) determined that the State-issued diploma A.D. received was a "regular high school diploma" that was "fully aligned with State standards" under 34 C.F.R. § 300.102(a)(3)(iv). The ALJ concluded A.D. was no longer entitled to a FAPE.

M.N. appealed the ALJ's decision to the Commissioner. The Commissioner concurred with the ALJ that "A.D.'s diploma is a 'regular high school diploma' that is fully aligned with State standards" and that "A.D. is no longer entitled to a free education in Sparta or any other New Jersey school district."

1

The Appellate Division affirmed. The Court granted M.N.'s petition for certification, limited to the question of whether the Appellate Division erred in holding that a State-issued high school diploma based on passing the GED is a "regular high school diploma" under the IDEA and its implementing regulations. See 256 N.J. 65 (2023).

**HELD:** A New Jersey State-issued diploma awarded based on passing the GED is not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv). Therefore, a student who receives such a State-issued diploma remains entitled to receive a free appropriate public education under the IDEA.

1. In the IDEA, Congress codified several purposes, including "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA provides federal funds to States in exchange for a commitment: to furnish a free appropriate public education to all children with certain physical or intellectual disabilities. Once a state accepts IDEA funds, eligible students with disabilities in that state acquire an enforceable substantive right to receive a FAPE. (pp. 14-16)

2. The obligation to provide a FAPE applies "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). Under the IDEA's implementing regulations, however, "[t]he obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i). Students with disabilities "who have graduated from high school but have not been awarded a regular high school diploma" remain eligible to receive a FAPE. Id. at (ii). The term "regular high school diploma" "means the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma"; it "does not include a recognized equivalent of a diploma, such as a general equivalency diploma." Id. at (iv). (p. 17)

3. New Jersey statutes and regulations recognize two types of high school diplomas: State-endorsed diplomas and State-issued diplomas. The DOE defines a "State-endorsed diploma" as "a locally-issued document awarded to an exiting student indicating successful completion of high school graduation requirements." N.J.A.C. 6A:8-1.3. State-issued diplomas, on the other hand, are issued not by local school districts, but by the Commissioner, and they do not require students to meet the same graduation requirements. Pursuant to N.J.S.A. 18A:50A-1, State-issued diplomas are awarded by the DOE upon "[d]emonstration of the appropriate level of academic competency," including by "passage of the Tests of General Educational

2

Development (GED) of the American Council on Education." DOE regulations define a "State-issued high school diploma" as "a high school diploma provided by the [DOE] to persons 16 years of age or older and no longer enrolled in school to document the attainment of academic skills and knowledge equivalent to a high school education." N.J.A.C. 6A:20-1.2. (pp. 18-20)

4. The Court holds that a State-issued diploma is not a "regular high school diploma" for purposes of the IDEA implementing regulations. Therefore, receipt of a State-issued diploma does not terminate this State's obligation to provide a free appropriate public education to a student eligible to receive one. Based on a concession by the Commissioner as well as statistics, it is a State-endorsed, rather than a State-issued, diploma that is "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards." See 34 C.F.R. § 300.102(a)(3)(iv). The Court rejects the argument that both a State-endorsed and a State-issued diploma are "the standard high school diploma awarded to the preponderance of students in the State" because both the Legislature and the DOE distinguish between State-issued and State-endorsed diplomas and because the phrase "the standard high school diploma" is singular. Even if that interpretation were not correct, the last sentence of the federal regulation specifies that "[a] regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential." Ibid. (emphasis added). The Court explains why it rejects the Commissioner's argument that this sentence does not apply to a diploma awarded upon passing the GED and notes that, in other contexts, the Commissioner has expressly conceded that a State-issued diploma awarded upon passing the GED is a "general equivalency diploma" and not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv). (pp. 21-27)

5. The Court explains why the Commissioner's decision in B.A. & J.H. ex rel. Minor Child M.A.A. v. Board of Education of Somerville does not help Sparta or the DOE here and notes that, in interpreting and applying the words of federal and state statutes and regulations in this case, it does not "wade into those areas of educational standards or policy which belong in the hands of educators," as Sparta argues. Instead, it simply enforces the educational standards and policies that have been enacted by Congress and the New Jersey Legislature and promulgated by the United States Department of Education and the Commissioner. (pp. 27-30)

**REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in JUSTICE WAINER APTER's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-16 September Term 2023
088378

Board of Education of
the Township of Sparta,
Sussex County,

Petitioner-Respondent,

v.

M.N., on behalf of A.D.,

Respondent-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 12, 2024 | August 7, 2024 |

Krista Haley Rue argued the cause for appellant (John Rue & Associates, attorneys; John Rue, on the briefs).

Katherine A. Gilfillan argued the cause for respondent Board of Education of the Township of Sparta (Schenck, Price, Smith & King, attorneys; Katherine A. Gilfillan and Catherine Popso O'Hern, on the brief).

Matthew Lynch, Deputy Attorney General, argued the cause for respondent Commissioner of the Department of Education (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel, and Sadia Ahsanuddin, Deputy Attorney General, on the brief).

1

Christian R. Martinez argued the cause for amicus curiae Disability Rights New Jersey (Pashman Stein Walder Hayden, attorneys; Christian R. Martinez and CJ Griffin, on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

In this case, we are asked to decide whether, under the Individuals with Disabilities Education Act (IDEA), a student with disabilities who received a State-issued diploma based on passing the General Education Development test (GED) is entitled to re-enroll in his local public high school to receive a free appropriate public education (FAPE).

The federal regulations implementing the IDEA state that a school district's obligation to provide a free appropriate public education does not apply to "[c]hildren with disabilities who have graduated from high school with a regular high school diploma."  34 C.F.R. § 300.102(a)(3)(i).  Students with disabilities "who have graduated from high school but have not been awarded a regular high school diploma," however, remain eligible to receive a free appropriate public education.  Id. at (ii).  The regulations define "regular high school diploma" as "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma."  Id. at (iv).  They then further specify that "[a]

2

regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma." Ibid.

We hold that a New Jersey State-issued diploma awarded based on passing the GED is not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv). Therefore, a student who receives such a State-issued diploma remains entitled to receive a free appropriate public education under the IDEA. We therefore reverse the judgment of the Appellate Division.

## I.

## A.

In September 2018, when he was fifteen years old, A.D. transferred to and enrolled in the Sparta Township Public Schools, run by the Sparta Township Board of Education (together, Sparta), for his sophomore year.[1] At his previous school, A.D. was designated as having a disability under the IDEA and received special education services. When A.D. began attending Sparta High School, Sparta accepted his individualized education program (IEP), dated April 18, 2018, from his previous school.

In January 2019, Sparta informed A.D. that he was in danger of failing several classes. On or around March 11, 2019, Sparta implemented temporary home instruction for A.D. through a combination of online classes and in-

---

[1] We use initials to protect A.D.'s identity.

3

person tutoring. Two weeks later, A.D.'s parents withdrew him from Sparta High School.

A.D. then took the GED and passed, achieving the "Statewide standard score" established pursuant to N.J.A.C. 6A:8-5.2(c). On April 29, 2019, A.D. thus received a State-issued high school diploma. That same month, A.D. re-enrolled at Sparta High School and again began receiving home instruction.

On May 22, 2019, the vice principal of the high school, Michael Lauricella, informed A.D.'s parents that A.D. "ha[d] met New Jersey graduation requirements as the GED diploma serves as an equivalent to one received in a New Jersey high school." Lauricella further advised that "[d]istrict services, including protections under the [IDEA] and home instruction services, cease upon receipt of a diploma" and that A.D.'s home instruction services would therefore be "discontinued effective immediately."

A.D.'s parents objected, and A.D. was permitted to continue receiving services, including home instruction, for the remainder of the 2018-2019 school year. A.D. attended Sparta High School, in person, at the start of the 2019-2020 school year as a high school junior. By February 2020, A.D. was again failing to complete his schoolwork, and the school district notified him that he was in danger of losing credit in four classes.

4

In March 2020, Sparta stopped in-person instruction due to the COVID-19 pandemic. A.D. was issued a computer for remote learning. However, he did not attend remote classes or complete required assignments, and he earned no academic credit for the 2019-2020 school year. On June 8, 2020, M.N., A.D.'s mother, again withdrew A.D. from the high school, checking off "entering the workforce" as the reason for his withdrawal.

In September 2020, M.N. began the process of re-enrolling A.D. at Sparta High School. However, A.D. did not attend school that fall, and instead enlisted in the United States Army. A.D. was medically discharged from the army on December 16, 2020.

In May 2021, after in-person learning resumed at Sparta High School, M.N. again tried to re-enroll A.D.; he was eighteen years old at the time. Sparta denied the request, citing A.D.'s receipt of a State-issued high school diploma in April 2019.

B.

M.N., pro se, filed a parental request for a due process hearing with the New Jersey Department of Education (DOE) Office of Special Education Policy and Dispute Resolution, arguing that A.D. had only obtained a diploma based on passing the GED and requesting that her son be allowed to re-enroll in high school "in order for him to obtain [a] regular high school diploma."

5

The Commissioner of the DOE (Commissioner) transferred the matter to the Office of Administrative Law (OAL).

Sparta then filed a Petition for Declaratory Ruling with the DOE Office of Controversies and Disputes, seeking a declaration that it was not obligated to re-enroll A.D. and that A.D.'s receipt of a State-issued diploma "foreclose[d] A.D.'s right to receive special education and related services from the District under both the IDEA and N.J.S.A. 18A:46-1.1 et seq. and the concomitant regulations." The Commissioner denied this request and transferred the matter to OAL.

The Administrative Law Judge (ALJ) granted Sparta's motion for summary decision, determining that the State-issued diploma A.D. received was "not merely . . . a GED" but was a "regular high school diploma" that was "fully aligned with State standards" under 34 C.F.R. § 300.102(a)(3)(iv). Therefore, the ALJ concluded, A.D. was no longer entitled to a FAPE. In reaching this conclusion, the ALJ relied on the Commissioner's decision in B.A. & J.H. ex rel. Minor Child M.A.A. v. Board of Education of Somerville, Commissioner Decision No. 201-09 (June 22, 2009). The ALJ then held a hearing on M.N.'s due process petition and dismissed the petition with prejudice.

6

M.N. appealed the ALJ's decision on Sparta's petition to the Commissioner. The Commissioner concurred with the ALJ that "A.D.'s diploma is a 'regular high school diploma' that is fully aligned with State standards and, therefore A.D. is no longer entitled to a free education in Sparta or any other New Jersey school district." According to the Commissioner, "'through its acceptance of alternative measures' to obtain a diploma, 'particularly the GED program,' 'the State has . . . recognized that means other than course/credit/assessment completion . . . [can] satisfy the statutory and constitutional mandate and warrant issuance of a State-endorsed diploma so as to end a student's entitlement to'" a FAPE. (quoting B.A. & J.H. and citing N.J.A.C. 6A:8-5.1(a)).

The Commissioner further found that under N.J.A.C. 6A:8-5.2, there is "no distinction" between a State-endorsed diploma and "a State-issued diploma, such that both diplomas demonstrate that the student has completed an education that is fully aligned with State standards." The State Board of Education, the Commissioner concluded, "has recognized that students may complete their education in non-traditional ways," and a "State-issued diploma simply reflects such an alternate pathway" -- it is "in no way a lesser

7

credential." The Commissioner therefore adopted the ALJ's decision on Sparta's petition as final.[2]

C.

M.N. appealed the Commissioner's decision to the Appellate Division, arguing that the "ALJ and NJDOE erred by ignoring the federal regulation

---

[2] The ALJ's decision on M.N.'s request for a due process hearing could only be appealed to the Superior Court of New Jersey or a federal district court. See 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.514; N.J.A.C. 1:6A-18.3. M.N. therefore filed suit in federal court requesting, among other things, relief declaring that a State-issued diploma based on passing the GED is not a "regular high school diploma" under the IDEA, injunctive relief allowing A.D. to re-enroll at Sparta, and attorney's fees and costs. M.N. also moved for a preliminary injunction. In an unpublished opinion, the United States District Court for the District of New Jersey denied the motion, finding M.N. could not demonstrate irreparable harm because of the "availability of compensatory education," which places children with disabilities "in the same position they would have occupied but for the school district's violations of IDEA." (quoting Ferren C. v. Sch. Dist. of Phila., 612 F.3d 712, 718 (3d Cir. 2010)). However, the court stated that it "[did] not find the ALJ or Commissioner's decisions persuasive because each failed to analyze the full text of 34 C.F.R. § 300.102(a)(3)(iv)." According to the district court, although A.D.'s State-issued diploma met New Jersey's standards, the ALJ and the Commissioner "overlooked the last sentence of" 34 C.F.R. § 300.102(a)(3)(iv), "which indicates that a regular high school diploma does not include a general equivalency diploma or similar lesser credential." M.N. and A.D., the district court explained, had a likelihood of success on the merits because "a high school diploma based solely on passing a GED exam does not constitute a regular high school diploma under 34 C.F.R. § 300.102(a)(3)(iv)," and "A.D. [was] still entitled to a FAPE notwithstanding his [S]tate-issued diploma."

8

regarding regular high school diplomas for students eligible under [the] IDEA" and that their decisions were thus "at odds" with the IDEA.[3]

The Appellate Division affirmed, concluding that there was "no basis to undo DOE's policy determination."  According to the Appellate Division, "[a]t the direction of the Legislature, the DOE promulgated regulations . . . to establish graduation standards for public high school students."  In doing so, "[t]he DOE . . . concluded as a matter of education policy that students who are not enrolled in school and achieve a passing score on the GED shall be awarded a high school diploma.  That specific policy determination by the DOE represents the alignment with state standards required by 34 C.F.R. § 300.102(a)(3)(iv)."  The Appellate Division therefore reasoned that Sparta was no longer required to provide A.D. with a FAPE.

D.

We granted M.N.'s petition for certification, limited to the question of whether the Appellate Division erred in holding that a State-issued high school diploma based on passing the GED is a "regular high school diploma" under

---

[3]  Sparta is thus incorrect in asserting that the Appellate Division was not "asked to interpret a federal statute or regulation."  In her opening brief to the Appellate Division, M.N. quoted the text of 34 C.F.R. § 300.102(a)(3) in full and argued that the "ALJ and Commissioner's decisions [were] plainly at odds" with the text of the regulation.

9

the IDEA and its implementing regulations. See 256 N.J. 65 (2023). We granted leave to Disability Rights New Jersey (DRNJ) to appear as amicus curiae.

II.

M.N., on behalf of A.D., argues that "[t]he decision to deny A.D. reenrollment into Sparta High School, based solely on his obtaining a GED, directly conflicts with federal law and thus[] cannot stand." In her briefing, M.N. states that "an irrevocable conflict exists between" N.J.A.C. 6A:8-5.2(c) and 34 C.F.R.§ 300.102(a)(3)(iv), such that N.J.A.C. 6A:8-5.2(c) is preempted by the Supremacy Clause of the United States Constitution. At oral argument, however, M.N. clarified that this Court need not reach preemption if it finds that the State-issued diploma A.D. received is not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv). According to M.N., the diploma A.D. received "was nothing more than a general equivalency diploma under a different name." In addition, M.N. asserts, it is "irrefutable" that a State-issued diploma is not received by "the preponderance of New Jersey high school students." It is thus not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv), M.N. maintains, and A.D. remains entitled to a FAPE. M.N. cautions that affirming the Appellate Division's decision would mean that "New Jersey students -- like A.D. -- who have disabilities but who

10

have passed the GED, will be prevented from" obtaining a FAPE "by school districts eager to limit their enrollment and expenses, in flagrant violation of the IDEA."

Focusing on the plain language of 34 C.F.R. § 300.102(a)(3)(iv), DRNJ contends that "State-issued diplomas are not regular high school diplomas." In DRNJ's view, that does not mean there is a conflict between N.J.A.C. 6A:8-5.2(c) and 34 C.F.R. § 300.102(a)(3). Instead, DRNJ explains, "both provisions can be applied harmoniously" by "recogniz[ing] and effectuat[ing]" the "critical distinction between receipt of a State-endorsed diploma and a State-issued diploma" under New Jersey statutes and regulations. According to DRNJ, that distinction was a deliberate legislative choice -- "[i]f the Legislature intended for a passing score on the GED exam to result in the issuance of a State-endorsed diploma, it could have expressly provided for that." DRNJ likewise agrees with M.N. that if this Court were to find that a State-issued diploma is a "regular high school diploma" under the IDEA, it would permit "district boards of education[] to push children with disabilities to take the GED exam instead of completing high school."

Sparta maintains that "the explicit language of the IDEA clearly demonstrates Congress' intention to allow the states to continue to . . . control the substantive content of the education imparted to their citizens including

11

those standards which constitute graduation credentials which fully align with the State's academic standards."  Sparta emphasizes that New Jersey is entitled to set its own substantive academic standards for applicants to obtain high school diplomas, and the IDEA does not interfere with that right.  Turning to the plain language of 34 C.F.R. § 300.102(a)(3), Sparta asserts that the definition of a regular high school diploma "contemplates an alternative high school diploma that is fully aligned with the State's academic standards."  According to Sparta, a State-issued high school diploma is just that:  "aligned with the academic standards expected of all students."  Therefore, in Sparta's view, "[t]his is not a case of federal preemption," and "the language of the State's statute and the federal regulation are not at odds."

Like Sparta, the Commissioner emphasizes that federal law "broadly defers to state law to develop . . . challenging state academic standards."  Although the Commissioner concedes that State-issued diplomas and State-endorsed diplomas are "separate and distinct" under New Jersey law, he agrees with Sparta that the "awarded to the preponderance of students" language in 34 C.F.R. § 300.102(a)(3)(iv) includes State-issued high school diplomas because such diplomas are also "fully aligned with state standards."  "[I]nterpreting the federal regulation . . . to categorically exclude State-issued diplomas" from the definition of "regular high school diplomas," the Commissioner asserts, would

12

frustrate the State's "important policy goal of assigning the same value to State-issued high school diplomas as State-endorsed ones so that students who need to obtain diplomas via that alternative path have the same employment, educational, and life opportunities as those who are capable of attaining diplomas from a specific school district."

III.

A.

Our review of administrative decisions is limited. We review only "(1) whether . . . the agency follow[ed] the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been" reached. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

This case concerns "whether . . . the agency follow[ed] the law." Ibid. In answering that question, we review a state agency's interpretation of a federal statute or regulation de novo, owing no deference to "a state agency's

13

interpretation of federal law." <u>G.C. v. Div. of Med. Assistance & Health Servs.</u>, 249 N.J. 20, 45 (2021).[4]

B.

Congress enacted the Education for All Handicapped Children Act of 1975 (EAHCA), to "assure that all handicapped children have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." Pub. L. No. 94-142, § 3(c), 89 Stat. 773, 775. Nearly thirty years later, Congress found that "the educational needs of millions of children with disabilities were [still] not being fully met," partly because of "low expectations." 20 U.S.C. § 1400(c)(2), (4). It therefore made several changes to the law, and renamed it the Individuals with Disabilities Education Act (IDEA).

---

[4] The Appellate Division therefore erred when it stated that "[i]t is well settled that we defer to the DOE's expertise in interpreting federal . . . statutes and regulations within its implementing and enforcing responsibility." We note that since the Appellate Division issued its decision, the United States Supreme Court held, in <u>Loper Bright Enterprises v. Raimondo</u>, that federal courts "may not defer" to a federal agency's interpretation of a federal statute even if the statute is ambiguous. 603 U.S. ___, 144 S. Ct. 2244, 2273 (2024). Although <u>Loper Bright</u> is not binding on this Court and we do not rely on it here, the Appellate Division did not explain why it was correct to defer to a state agency's interpretation of a non-ambiguous federal regulation that the state agency did not promulgate. No such deference is appropriate under our caselaw.

14

In the IDEA, Congress found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." Id. at (c)(1). "[T]he education of children with disabilities can be made more effective," Congress declared, by "having high expectations . . . and ensuring their access to the general education curriculum in the regular classroom, to the maximum extent possible." Id. at (c)(5)(A). Congress additionally explained that although states and local school districts "are primarily responsible for providing an education for all children with disabilities," the federal government should "have a supporting role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law." Id. at (c)(6). Congress therefore codified several purposes, including "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." Id. at (d)(1)(A).

Congress enacted the IDEA pursuant to its power under the Spending Clause of the United States Constitution. Arlington Cent. Sch. Dist. Bd. of

Educ. v. Murphy, 548 U.S. 291, 295 (2006). "[L]egislation enacted pursuant to the spending power is much in the nature of a contract" -- recipients of federal funds agree "to be bound by federally imposed conditions." Id. at 296 (alteration in original) (internal quotation marks omitted) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981)). The IDEA thus provides "federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' . . . to all children with certain physical or intellectual disabilities." Fry v. Napoleon Cmty. Schs., 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. § 1412(a)(1)(A)). Once a state accepts IDEA funds, eligible students with disabilities in that state acquire an "enforceable substantive right" to receive a FAPE. Smith v. Robinson, 468 U.S. 992, 1010 (1984); accord Fry, 580 U.S. at 158.

In providing a FAPE, a state must, "[t]o the maximum extent appropriate," ensure that students with disabilities are educated in the "least restrictive environment" -- i.e., "with children who are not disabled." 20 U.S.C. § 1412(a)(5)(A). The IDEA also requires that "special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when" required by "the nature or severity of the disability of a child." Ibid.

16

C.

The obligation to provide a FAPE applies generally "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." Id. at (1)(A). Under the IDEA's implementing regulations, however, "[t]he obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i). Students with disabilities "who have graduated from high school but have not been awarded a regular high school diploma" remain eligible to receive a FAPE. Id. at (ii).

The term "regular high school diploma"

> means the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma, except that a regular high school diploma shall not be aligned to the alternate academic achievement standards described in section 1111(b)(1)(E) of the [Elementary and Secondary Education Act,] ESEA. A regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential.
>
> [Id. at (iv).][5]

---

[5] "[S]ection 1111(b)(1)(E) of the ESEA" refers to a provision codified as 20 U.S.C. § 6311(b)(1)(E), enacted by the Every Student Succeeds Act (ESSA). The ESSA reauthorized and amended the ESEA in 2015 and continues to

17

D.

New Jersey statutes and regulations recognize two types of high school diplomas:  State-underline{endorsed} diplomas and State-underline{issued} diplomas.

A "State-endorsed high school diploma" is awarded by "[d]istrict boards of education."  N.J.A.C. 6A:8-5.2(a).  "All students who meet State and local graduation requirements shall receive a State endorsed diploma . . . ."  N.J.S.A. 18A:7C-4.  "[S]tudents not meeting these standards" may not receive a State-endorsed diploma.  Ibid.  The DOE thus defines a "State-endorsed diploma" as "a locally-issued document awarded to an exiting student indicating successful completion of high school graduation requirements."  N.J.A.C. 6A:8-1.3.

The DOE prescribes that "local graduation requirements," which must be met for a student to receive a State-endorsed diploma, must "prepare students for success in post-secondary degree programs, careers, and civic life in the 21st century."  N.J.A.C. 6A:8-5.1(a).  They must include, among other things:  (1) "not fewer than 120 credits in courses designed to meet all of the [New Jersey Student Learning Standards]"; (2) "[l]ocal student attendance requirements"; (3) "[a]ny other requirements established by the district board of education"; and (4) demonstration of "proficiency by achieving a passing

---

govern general education policy for students from preschool through twelfth grade.  Every Student Succeeds Act, Pub. L. No. 114-95, 129 Stat. 1802 (2015).

18

score on the [English language arts] and mathematics components of the State graduation proficiency test" or an approved alternative proficiency assessment. Ibid. In the alternative, "[t]hrough the IEP process . . . district boards of education may specify alternate requirements for a State-endorsed diploma for individual students with disabilities." Id. at (c).

State-issued diplomas, on the other hand, are issued not by local school districts, but by the Commissioner, and they do not require students to meet these same graduation requirements.

Pursuant to N.J.S.A. 18A:50A-1,

> [a] State-issued high school diploma shall be provided by the New Jersey Department of Education to persons 16 years of age or older and no longer enrolled in school to document the attainment of academic skills and knowledge equivalent to a high school education. Demonstration of the appropriate level of academic competency for receipt of the State-issued high school diploma shall include, but need not be limited to, passage of the Tests of General Educational Development (GED) of the American Council on Education.[6]

---

[6] The "GED Testing Service" is a joint venture between the American Council on Education and a private company called Pearson, "modeled to represent a public-private partnership." It has offered the GED "as a high school equivalency assessment" since 1942. See GED Testing Service®, Am. Council on Educ., https://www.acenet.edu/National-Guide/Pages/Organization.aspx?oid=20099b28-9016-e811-810f-5065f38bf0e1 (last visited July 9, 2024).

19

DOE regulations then set forth two separate paths to a State-issued diploma. "[T]he Commissioner shall award a State-issued high school diploma" "to individuals age 16 or older who are no longer enrolled in school": (1) "based on achieving the Statewide standard score[7] on the General Education Development test (GED) or other adult education assessments"; or (2) "based on official transcripts showing at least 30 general education credits leading to a degree at an accredited institution of higher education." N.J.A.C. 6A:8-5.2(c), (d). In both circumstances, a "State-issued high school diploma" is defined as "a high school diploma provided by the [DOE] to persons 16 years of age or older and no longer enrolled in school to document the attainment of academic skills and knowledge equivalent to a high school education." N.J.A.C. 6A:20-1.2.

## IV.

With this background in mind, we hold that a State-issued diploma is not a "regular high school diploma" for purposes of the IDEA implementing regulations. Therefore, receipt of a State-issued diploma does not terminate

---

[7] When A.D. received his State-issued diploma, the "Statewide standard score" for passage of the GED was "the minimum passing standard set by the respective test vendor [the American Council on Education] and accepted by resolution of the State Board of Education." N.J.A.C. 6A:20-1.4(a)(1)(i) (2013).

this State's obligation to provide a free appropriate public education to a student eligible to receive one.

A.

The IDEA regulations are clear -- a regular high school diploma is "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma." 34 C.F.R. § 300.102(a)(3)(iv).

At oral argument, Sparta maintained that there is no evidence in the record as to whether a State-issued or a State-endorsed high school diploma is "awarded to the preponderance of students in the State." But the Commissioner conceded that "without a doubt . . . more than a preponderance, probably the vast majority of students obtain high school diplomas in this State that are State-endorsed high school diplomas from local [school] districts."

The data support that concession. In 2022, out of all New Jersey students who entered high school four years earlier, 91.1% graduated and earned a State-endorsed high school diploma by completing local graduation requirements; 3.8% were still enrolled in high school; and 5.1% had dropped out or were no longer enrolled in school. See Dep't of Educ., NJ School Performance Report: Graduation/Postsecondary (Graduation/Postsecondary Report), https://rc.doe.state.nj.us/2021-2022/state/detail/

21

postsecondary?lang=EN (last visited July 9, 2024). In contrast, in that same year, a total of 1,050 students in New Jersey earned a State-issued diploma by passing the GED. See Dep't of Educ., New Jersey Adult Education: Reports, https://www.nj.gov/education/adulted/resources/reports/ (last visited July 9, 2024). Thus, under 34 C.F.R. § 300.102(a)(3)(iv), it is a State-endorsed, rather than a State-issued, diploma that is "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards."

Both Sparta and the Commissioner argue that the phrase "that is fully aligned with State standards," is a "restrictive clause that must be read into the preceding part of the phrase." Therefore, according to the Commissioner and Sparta, both a State-endorsed and a State-issued diploma are "the standard high school diploma awarded to the preponderance of students in the State."

That argument ignores the deliberate choice of our Legislature and the DOE, both in statute and regulation, to distinguish between State-issued and State-endorsed diplomas. And it overlooks that the phrase "the standard high school diploma" is singular. See, e.g., Niz-Chavez v. Garland, 593 U.S. 155, 166 (2021) ("[T]he law seems to speak of the charging document as a discrete thing, using a definite article with a singular noun ('the notice').");  Sun Co., Inc. v. Zoning Bd. of Adjustment of Avalon, 286 N.J. Super. 440, 447 (App.

22

Div. 1996) ("[W]e are satisfied that the use in Avalon's ordinance of the singular article 'the' modifying the term 'principal use' reflects an intent that there be but one principal use on the property."). Grammatically, both types of diplomas, which the Commissioner and Sparta agree are distinct for purposes of state law, cannot be "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards." Only a State-endorsed diploma meets that requirement.

Even if that interpretation were not correct, the last sentence of the federal regulation specifies that "[a] regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential." 34 C.F.R. § 300.102(a)(3)(iv) (emphasis added). When a State-issued diploma is awarded "based on achieving the Statewide standard score on the General Education Development test (GED)," N.J.A.C. 6A:8-5.2(c), it is precisely the type of "general equivalency diploma" that does not qualify as a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv).

For the first time at oral argument, the Commissioner asserted that the words "general equivalency diploma" in the federal regulation cannot refer to a diploma received after passing the GED because of an amendment to the regulation in 2017. Prior to 2017, 34 C.F.R. § 300.102(a)(3)(iv) stated that a

23

regular high school diploma "does not include an alternative degree that is not fully aligned with the State's academic standards, <u>such as a certificate or a general educational development credential (GED)</u>."  34 C.F.R. § 300.102(a)(3)(iv) (2006) (emphasis added).  In 2017, the United States Department of Education amended the regulation to read as it currently does, seeking to "incorporate the definition of 'regular high school diploma' currently included in section 8101(43) of the ESEA . . . to ensure that 'regular high school diploma' has the same meaning under the IDEA and the ESEA, and the definition is consistently applied under both programs."  Assistance to States for the Education of Children with Disabilities, 82 Fed. Reg. 29755, 29756 (June 30, 2017).[8]

_____

[8]  As earlier noted, the ESEA was reauthorized as the ESSA in 2015.  Today, the ESSA provides that a "regular high school diploma"

> (A) means the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma, except that a regular high school diploma shall not be aligned to the alternate academic achievement standards described in section 6311(b)(1)(E) of this title; and

> (B) does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential.

[20 U.S.C. § 7801(43).]

In the Commissioner's view, because the regulation was changed from "a regular high school diploma does not include an alternative degree that is not fully aligned with the State's academic standards, such as a certificate or a general educational development credential (GED)" to "[a] regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma," a general equivalency diploma cannot be a diploma awarded based upon passing the GED.

Generally, we will not consider arguments, like this one, that are raised for the first time at oral argument, and were never mentioned to the ALJ, the Commissioner, the Appellate Division, or even in briefing to this Court. See, e.g., State v. Legette, 227 N.J. 460, 467 n.1 (2017) (declining to consider an argument raised "for the first time on appeal"); J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021) (declining to consider arguments that were raised before neither the New Jersey State Parole Board nor the Appellate Division).

Even if we were to reach the DOE's belated assertion, we would find it meritless. There is no evidence in the administrative record to suggest that in seeking to align definitions between the IDEA and the ESSA, the United States Department of Education sought to substantively change a student's rights under the IDEA, such that where a student who obtained a State-issued diploma based on passing the GED previously remained entitled to enroll in

25

high school to obtain a regular high school diploma, the amendment extinguished that right.

Indeed, the Commissioner has expressly conceded in other contexts that a State-issued diploma awarded upon passing the GED is a "general equivalency diploma" and not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv) and the ESSA. Under the ESSA, states that submit their high school graduation rates to the United States Department of Education "shall not include any student awarded a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential" among those students "who earned a regular high school diploma." 20 U.S.C. § 7801(23)(A)(ii)(II), (25)(A)(ii)(II) (emphasis added). If the Commissioner believed that a State-issued diploma awarded upon passing the GED was not a "general equivalency diploma," and was instead a "regular high school diploma" under the definition set forth in 34 C.F.R. § 300.102(a)(3)(iv) and the ESSA, the DOE should report students who obtain a State-issued diploma after passing the GED among those who "earned a regular high school diploma." It does not.

Instead, the DOE's own website reports that only "students who received a [S]tate-endorsed diploma" are included in graduation rates. See

26

<u>Graduation/Postsecondary Report</u>. The DOE's own reporting thus contradicts its litigation position in this case.

B.

We offer two additional comments. The ALJ, the Commissioner, and the Appellate Division all treated State-issued and State-endorsed high school diplomas interchangeably, relying on language from the Commissioner's previous decision in <u>B.A. & J.H.</u> The relevant passage from <u>B.A. & J.H.</u> reads:

> [A] <u>State-endorsed high [school] diploma</u> -- the credential signifying attainment of the skills and knowledge deemed necessary by the State of New Jersey for its students to be successful in their careers and daily lives -- <u>can be earned</u> not only by completing the specific course, credit and assessment requirements of N.J.A.C. 6A:8-5.1(a), but also by demonstrating academic skills and knowledge equivalent to such requirements through alternative means, specifically, . . . <u>by achieving the required scores on the General Educational Development (GED) test of the American Council on Education</u>, N.J.A.C. 6A:8-5.2(c); N.J.A.C. 6:30-1.3.
>
> [Commissioner Decision No. 201-09, at *3 (emphases added).]

At the time of the Commissioner's decision in <u>B.A. & J.H.</u>, in June 2009, that statement was correct. Today, it is not.

N.J.A.C. 6A:8-5.2(c) then provided that the Commissioner would award a "<u>State-endorsed high school diploma</u> based on achieving the Statewide

27

standard scores for passage of the [GED], to individuals age [sixteen] or older who are no longer enrolled in school and have not achieved a high school credential." The following month, the regulation was amended, explicitly replacing the words "State-endorsed high school diploma" with "State-issued high school diploma." See 41 N.J. Reg. 1302(a) (April 6, 2009). Students who are not enrolled in school can thus no longer be awarded a State-endorsed high school diploma by "achieving the Statewide standard score" on the GED. Instead, the State, through its statutes and regulations, now recognizes differences between a State-endorsed and a State-issued high school diploma, and it allows for only a State-issued diploma based on passage of the GED.

Again, contrary to its litigation position in this case, the DOE has acknowledged as much in the past. As DRNJ points out, the State Board of Education has previously explained that a "State-issued diploma represents something different than the State-endorsed diploma" because a recipient of a State-issued diploma "is not considered a graduate of a New Jersey high school." Bd. of Educ., State Board of Education Comment/Response Form, Revised Qualifying Scores for State-Issued High School Diplomas 2 (Mar. 4, 2020). The Board further stated that "[i]ndividuals who take a high school equivalency assessment have not met all of the State and local high school

28

graduation requirements needed for a State-endorsed diploma." Ibid. B.A. & J.H. thus does not help Sparta or the DOE here.

Finally, Sparta has repeatedly insisted that "this case invites the [C]ourt to substitute its ideas or ideals of educational policy for those to whom the [L]egislature has entrusted that task," and to become an "arbiter[] of curricular standards and assessments," judging "the quality of the actual diploma/education received." That is incorrect.

This case requires us to interpret and apply the plain language of federal and state statutes and regulations. That falls comfortably within a core judicial duty: construing the words of laws that the Legislature enacts and regulations that administrative agencies promulgate. See Goulding v. NJ Friendship House, Inc., 245 N.J. 157, 167 (2021) ("[C]ourts remain the 'final authorities' on issues of statutory construction and [need not] 'stamp' their approval of the administrative interpretation" (alteration in original) (quoting Koch v. Dir., Div. of Tax'n, 157 N.J. 1, 8 (1999))); Lourdes Med. Ctr. of Burlington Cnty. v. Bd. of Rev., 197 N.J. 339, 364 (2009) ("[A court's] duty is to construe and apply the statute as enacted." (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005))).

Despite Sparta's assertion, in interpreting and applying the words of federal and state statutes and regulations, we do not "wade into those areas of

educational standards or policy which belong in the hands of educators" -- we simply enforce the educational standards and policies that have been enacted by Congress and the New Jersey Legislature and promulgated by the United States Department of Education and the Commissioner.

V.

In obtaining a State-issued diploma based on passing the GED, A.D. obtained a degree documenting "the attainment of academic skills and knowledge equivalent to a high school education."  See N.J.S.A. 18A:50A-1. He did not, however, obtain a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3).  A.D. therefore remains entitled to receive a free appropriate public education, and Sparta remains required, under the IDEA, to provide him with one.

Accordingly, we reverse the judgment of the Appellate Division.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in JUSTICE WAINER APTER's opinion.